UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANASTASIA M. FIELD,

    Plaintiff,

v.                                                        Case No. 6:18-cv-119-Orl-37KRS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER

In the instant social security appeal, Plaintiff Anastasia Field seeks review of the Commissioner of Social Security's final decision denying the claim for social security benefits filed by her deceased son Christopher Field. (Doc. 1.) On referral, U.S. Magistrate Judge Karla R. Spaulding recommends affirming the Commissioner's final decision. (Doc. 33 ("**R&R**").) Plaintiff then objected to the R&R (Doc. 34 ("**Objection**")), now before the Court. On *de novo* review, the Court finds that the Objection is due to be overruled, the R&R adopted, and the Commissioner's final decision affirmed.

### I.    BACKGROUND

In May 2013, Christopher Field applied for disabled adult child benefits and supplemental security income ("**SSI**") benefits due to a congenital valve defect, bulging discs, seizure disorder, strokes, arthritis, bipolar disorder, and attention deficit

-1-

hyperactivity disorder ("**ADHD**"). (R. 502.)[1] He alleged a disability onset date of October 1, 2011 when he was 19 years old. (R. 429, 431.)

After his claims were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge ("**ALJ**"). (R. 259–61) An initial hearing was held on September 15, 2015 where Christopher appeared with counsel present, but the hearing was continued based on his counsel's untimely submission of evidence. (R. 157–68.) The hearing was scheduled for December 1, 2015 (R. 311), but Christopher died on November 30, 2015 (R. 461). Anastasia Field, his mother, applied to be substituted as the party upon Christopher's death (R. 418), and the ALJ held additional hearings on April 12, August 31, and November 10, 2016. (R. 54–154.)

On February 2, 2017, the ALJ issued an unfavorable decision finding that Christopher was not disabled for his SSI and child insurance benefits claims. (R. 16–42.) Following the Social Security Administration's ("**SSA**") five-step sequential process, the ALJ found that Christopher had these severe impairments: a history of recurrent endocarditis secondary to IV drug abuse and polysubstance drug abuse; a history of mitral valve replacement secondary to endocarditis; a history of seizure disorder likely secondary to opiate withdrawal or IV drug abuse; and a history of polysubstance abuse. (R. 20.) The ALJ found that Christopher's medically determinable mental impairments were non-severe, and he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in SSA regulations.

---

[1] The Court cites the administrative record as "**R.**" in reference to the Social Security Transcript located at Doc. 9.

(R. 20–22.) Thus, the ALJ assessed Christopher's residual functional capacity ("**RFC**"):

> 5. After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant could, during a normal 8-hour workday with reasonable and customary breaks, sit, stand and walk for 6 hours each; he could occasionally lift/carry 20 pounds and more frequently lift/carry 10 pounds or less; he could use his upper or lower extremities for the push/pull operation of arm/hand and foot/pedal controls occasionally; he could climb ramps and stairs occasionally, but could never climb ropes, ladders and scaffolds; all other postural activities could have been performed occasionally; he could use his upper extremities for reaching in all directions, handling, fingering and feeling frequently; he had no difficulties in his ability to see, speak or hear; he should avoid work around unprotected heights and dangerous moving machinery; he was able to perform simple, rote and repetitive tasks in a well-structured work setting where job tasks were relatively the same from one day to the next; he could have only occasional interaction with members of the general public, co-workers and supervisors; and was unable to perform jobs requiring that he meet a strict production goal or quota; but he could not sustain this work activity on a regular and continuing basis (8 hours per day, 5 days per week or an equivalent work schedule pursuant to SSR 96-8p) due to his continued IV drug and other substance abuse .

(R. 23.) The ALJ found that Christopher had no past relevant work and considered whether any jobs existed in the national economy that he could perform, finding:

> **10. Considering the claimant's age, education, work experience and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**
>
> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).
>
> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, the additional limitations from all of the impairments, including the substance use disorders, so narrow the range of work the claimant can perform that a finding of "disabled" is appropriate under the framework of this rule. The claimant was unable to sustain any work activity on a regular and continuing basis; therefore, he would be found disabled pursuant to SSR 96-8p.

(R. 36.) From there, the ALJ considered what limitations were attributable to Christopher's substance abuse, finding that if Christopher stopped the substance abuse, he would have non-severe medically determinable mental limitations. (R. 37–38.) Ultimately, if Christopher stopped the substance abuse, the ALJ found that he would not have had any impairment or combination of impairments that met or medically equaled any of the listed impairments in the SSA regulations. (R. 38.) Therefore, the ALJ found this RFC:

> 13. If the claimant stopped the substance use, the claimant would have had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant could, during a normal 8-hour workday with reasonable and customary breaks, sit, stand and walk for 6 hours each; he could occasionally lift/carry 20 pounds and more frequently lift/carry 10 pounds or less; he could use his upper or lower extremities for the push/pull operation of arm/hand and foot/pedal controls occasionally; he could climb ramps and stairs occasionally, but could never climb ropes, ladders and scaffolds; all other postural activities could have been performed occasionally; he could use his upper extremities for reaching in all directions, handling, fingering and feeling frequently; he had no difficulties in his ability to see, speak or hear; he should avoid work around unprotected heights and dangerous moving machinery; he was able to perform simple, rote and repetitive tasks in a well-structured work setting where job tasks were relatively the same from one day to the next; could have only occasional interaction with members of the general public, co-workers and supervisors and was unable to perform jobs requiring that he meet a strict production goals or quotas. These limitations were secondary to his lack of any past relevant work as opposed to any mental impairments.

(R. 38.) The ALJ then re-assessed whether jobs existed in the national economy based on this RFC and the testimony of a vocational expert ("**VE**"), who testified that an individual would be able to perform the requirements of representative unskilled occupations such as Blade Balancer, Egg Candler, and Maker II. (R. 40–41.) Thus, the ALJ found:

> Based on the vocational expert's testimony, the undersigned concludes that, if the claimant had stopped the substance use, he would have been capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of Medical-Vocational Rule 202.20.

(R. 41.) With this, the ALJ concluded:

> 17. The substance use disorder was a contributing factor material to the determination of disability because the claimant would not have been disabled if he stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder was a contributing factor material to the determination of disability, the claimant was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of his death.
>
> 18. The claimant was not under a disability, as defined in the Social Security Act, from October 1, 2011 through the date of death (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

(R. 41.)

Following the ALJ's decision of no disability, Anastasia requested review by the Appeals Council. (R. 419.) She submitted her own medical records and medical records from Christopher's sister to support her belief that Christopher potentially suffered from Ehler Danlos Syndrome ("**EDS**") and thus was disabled. (R. 419–28, 1408–31.) She also sought review on the grounds that the ALJ exhibited bias against Christopher. (R. 419–28.) The Appeals Council denied her request for review, finding the medical records not material to Christopher's claim and that the ALJ did not abuse his discretion. (R. 1–2.) As such, the ALJ's finding of no disability became the Commissioner's final decision.

Anastasia then initiated this action requesting review of the Commissioner's decision and reversal for an award of benefits or remand. (Doc. 1.) As grounds, Anastasia cited three assignments of error: (1) the ALJ failed to allow her to conduct a complete cross-examination regarding EDS and submit supporting evidence; (2) the Appeals Council's determination that Anastasia and Christopher's sister's medical records were not material; and (3) the ALJ's determination that Christopher's substance abuse was a contributing factor material to the determination of disability and finding of no disability. (Doc. 23, pp. 13–24.) Magistrate Judge Spaulding then ordered the parties to submit supplemental briefing on the issue of Anastasia's standing to pursue both claims for SSI and child insurance benefits. (Doc. 25.) The parties complied (Doc. 28, 29.),

Magistrate Judge Spaulding then issued a comprehensive R&R that: (1) Anastasia's appeal of the SSI claim should be dismissed because she lacked standing to pursue this claim; and (2) the Commissioner's decision be affirmed as to the finding of no disability for the child insurance benefits claim. (Doc. 33, pp. 6–7, 14–19.) Anastasia

objected, claiming: (1) Anastasia has standing because she was substituted as the party to Christopher's claims; (2) the R&R used the wrong standard of review for her claim that the Appeals Council erred by not considering the additional medical records; (3) the R&R erred in determining that no evidence existed in the record regarding EDS and finding Plaintiff's cross examination argument unavailing; and (4) Plaintiff should have been afforded an opportunity to amend her complaint. (Doc. 34.) Thus, the matter is ripe.

## II.   LEGAL STANDARDS

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

## III.   DISCUSSION

The Objection raises four issues, three of which are relevant to the R&R. (Doc. 34.) In the fourth, however, Plaintiff mounts an "objection to refusal of the MJ to allow leave of court for plaintiff to amend Complaint to include a *Lucia* claim." (*Id.* at 6.) As Plaintiff never sought to appeal Magistrate Judge Spaulding's Order denying leave to amend her complaint under Federal Rule of Civil Procedure 72(a), the Court will not entertain that

argument now. *Celestine v. Capital One*, 741 F. App'x 712, 715 (11th Cir. 2018) [2] (citing Fed. R. Civ. P. 72(a); then citing *Farrow v. West*, 320 F.3d 1235, 1248 n.21 (11th Cir. 2003)) ("However, where the party appealing the denial of a non-dispositive motion failed to object to or appeal the magistrate judge's decision to the district court, that party waives his argument that the magistrate judge erred in denying the order."). As to Plaintiff's other arguments, the Court addresses each in turn below.

A. **Standing Argument for SSI Benefits Claim**

First, Plaintiff objects to the R&R's finding that Anastasia lacks standing to pursue Christopher's SSI claim. (Doc. 33, pp. 1–4.) Plaintiff claims standing based on 42 U.S.C. §§ 405(g) and 1323(c)(3). (*Id.*) Yet as Magistrate Judge Spaulding noted, simply being a named party to a case is not enough to confer standing. (Doc. 33, p. 5.) In social security cases, a plaintiff must demonstrate that she is an individual that the SSA recognizes as entitled to receive any benefits due to the claimant. (*Id.* (citing *Brown o/b/o Brown v. Berryhill*, No. 17-CV-11577, 2017 WL 5898459, at *2 (E.D. Mich. Nov. 30, 2017)).) And for Anastasia's pursuit of Christopher's SSI claim, "[i]t is clear that a parent of a deceased adult disabled child is not entitled to collect past due SSI benefits owed to the child." *Knight v. Colvin*, No. 3:14-cv-1438-J-JBT, 2015 WL 12852312, at *2 (M.D. Fla. Dec. 11, 2015) (citing 42 U.S.C. § 1383(b)(1)(A); then citing 20 C.F.R. § 416.542(b); then citing *Fowler v. Astrue*, No. 8:09-cv-1368-27MAP, 2010 WL 454765, at *1 (M.D. Fla. Feb. 9,

---

[2] While unpublished opinions are not binding precedent, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

2010) ("[Claimant's] claim for Supplemental Security Income (SSI) extinguished upon his death, and [his parents are] limited to seeking review of their son's denial for disability insurance benefits.") (collecting cases)). Thus, Plaintiff is incorrect that Anastasia's status as a substituted party enables her to pursue all of Christopher's claims. (Doc. 34, pp. 1–4.)

As Magistrate Judge Spaulding parsed out, Anastasia may only pursue Christopher's disabled adult child claim on appeal. (Doc. 33, pp. 6–7.) This is because the SSA allows for these types of benefits, on death of the claimant, to be distributed to survivors or heirs according to a statutorily-established order of priority. 42 U.S.C. § 404(d). As it stands, Anastasia has the highest level of priority and may pursue Christopher's claim seeking review of the Commissioner's decision to deny his application for disabled adult child benefits. (*See* Doc. 33, pp. 6–7.) But as the R&R found, Anastasia cannot pursue Christopher's SSI claim. (*Id.* at 5–6.) Thus, the Court overrules the Objection on this ground.

### B. Standard of Review Argument

Next, Plaintiff asserts that the R&R used the wrong standard of review as to her claim that the Appeals Council legally erred in not allowing the admission of Anastasia and Christopher's medical records. (Doc. 34, pp. 4–5.) Generally speaking, "[w]hen the Appeals Council refuses to consider new evidence submitted to it and denies review, the decision is subject to judicial review." *Ring v. Soc. Sec. Admin. Comm'r*, 728 F. App'x 966, 967 (11th Cir. 2018) (citing *Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1320 (11th Cir. 2015)). The Court reviews "*de novo* whether evidence meets the new, material, and

chronologically relevant standard." *Id.* (citing *Washington*, 806 F.3d at 1321). "When the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.* (citing *Washington*, 806 F.3d at 1321).

Here, the Appeals Council found that Anastasia's submission of additional medical records was not material because it was not relevant to Christopher's claim. (R. 2.) Thus, it did not consider that additional evidence. (*Id.*) After Plaintiff cited this refusal as an assignment of error, Magistrate Judge Spaulding reviewed "the evidence presented to the Appeals Council as part of the record as a whole" (Doc. 33, p. 17 n.9) — in other words, *de novo*. *See, e.g.*, *Washington*, 806 F.3d at 1321 (conducting *de novo* review of whether evidence claimant submitted to appeals council was material in light of other evidence in record); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (same). And in looking at the whole record, Magistrate Judge Spaulding found "no opinion from a medical professional that these records support a finding that Christopher had EDS." (*Id.* at 17.) Thus, she concluded the Appeals Council was correct in not finding the evidence material because it did not raise a "reasonable possibility that consideration of those records would have changed the ALJ's Decision." (*Id.* at 17 (citing *Robinson v. Astrue*, 365 F. App'x 993, 996 (11th Cir. 2010))); *see also Hyde*, 823 F.3d at 459. As this is the correct legal standard applicable to Plaintiff's assignment of error, the Court overrules the Objection on these grounds.

### C. Cross-Examination Argument

Last, Plaintiff claims that the R&R "does not address certain facts in the record that show that the Plaintiff attempted to cross examine the Medical Expert and Vocational

-10-

expert to [sic] regarding the genetic disorder, EDS." (Doc. 34, p. 5.) Plaintiff's counsel then cites to his cross-examination of the medical expert concerning the symptoms of EDS in an apparent attempt to show that the R&R overlooked this testimony. (*Id.* at 5–6.) Yet Magistrate Judge Spaulding's R&R quotes the entire exchange—it takes up one and a half pages in the R&R. (Doc. 33, pp. 14–16.) She then found unavailing Plaintiff's argument that the ALJ erred in limiting his cross examination because no prejudice resulted. (*Id.* at 16.) Specifically, Plaintiff's counsel could not point to any medical evidence supporting this potential EDS diagnosis for Christopher, as the medical expert testified that she did not "find any evidence of a genetic disorder that was defined in this record or discussed or otherwise felt to be a consideration in [Christopher's] medical history or problems" and no other record evidence supported this claim. (*Id.* (citing R. 96–98).)

On review, the Court reaches the same conclusion: There is no support for counsel's assertion that Christopher suffered from EDS, and that his sister and mother had this diagnosis does not change the calculus. The ALJ thoroughly considered this issue but found the evidence lacking—however unfortunate that may be. (*See* R. 97–100 (ALJ discussion with counsel at hearing); R. 34–35 (ALJ Decision discussing lack of evidence to support EDS diagnosis).) Frankly, nothing has changed since the ALJ's consideration of this issue, and based on the objective medical evidence before him, the ALJ found Christopher's symptoms attributable to drug use, not EDS. (R. 33–36.) This finding is amply supported by the record and like Magistrate Judge Spaulding, the Court finds no error in the limitation of cross-examination. (Doc. 33, pp. 14–18.) Thus, the Objection is overruled on this ground.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. U.S. Magistrate Judge Karla R. Spaulding's Report and Recommendation (Doc. 33) is **ADOPTED, CONFIRMED**, and made a part of this Order.

2. Plaintiff's Objections to Findings, Orders, Report and Recommendations of Magistrate Judge (Doc. 34) is **OVERRULED**.

3. Plaintiff's appeal from the denial of SSI benefits is **DISMISSED** for lack of jurisdiction.

4. The Commissioner's final decision denying Plaintiff's claim for disabled adult child benefits is **AFFIRMED**.

5. The Clerk is **DIRECTED** to:

    a. Enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Anastasia Field; and

    b. Close this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 25, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record